IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RAYMOND L. AMERSON, ) | Civil Action No. 3:09-2857-HMH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on October 2, 2006, alleging disability since January 6, 2006. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held on March 19, 2009, at which Plaintiff (represented by counsel) appeared and testified, the ALJ issued a decision on June 23, 2009, denying benefits. A vocational expert ("VE") also testified at the hearing. The ALJ found that Plaintiff was not disabled within the meaning of the Act because, under the medical-vocational guidelines (also known as the "Grids") promulgated by the Commissioner, Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2.

Plaintiff was fifty-six years old at the time of the ALJ's decision. He has a twelfth grade education (without a high school diploma), with past relevant work as a general farmer. (Tr. 14, 22, 98, 104, 109-109). Plaintiff alleges disability since January 6, 2006, due to arthritis, back pain, depression, and irritable bowel syndrome. (Tr. 10, 97, 110).

The ALJ found (Tr. 11-21):

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2006.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 6, 2006 through his date last insured of March 31, 2006 (20 CFR 404.1571 *et. seq.*)

3. Through the date last insured, the claimant had the following severe impairments: back pain, depression, and irritable bowel syndrome (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform medium and unskilled work.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 25, 1953 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date last insured. The claimant subsequently changed age category to advanced age. (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).[1]

---

[1]It is unclear whether Plaintiff has a high school education or a limited education, as he testified that he did not get a diploma. Tr. 22. Upon remand, the ALJ should clarify this.

2

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 6, 2006, the alleged onset date, through March 31, 2006, the date last insured (20 CFR 404.1520(g)).

On September 14, 2009, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on November 2, 2009.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

**MEDICAL RECORD**

Between 2001 and 2005 (prior to Plaintiff's alleged disability onset date), Plaintiff was treated by family practitioners Dr. Sidney Griffin and Dr. Martin Carmichael and gastroenterologist Dr. Manver Razick for complaints related to irritable bowel syndrome ("IBS"), gastrointestinal reflux, pernicious anemia (decreased red blood cells due to an inability to absorb vitamin B-12), sleep apnea, low back strains, body aches, hypertension, allergies, gout, fatigue, and depression. See Tr. 149-179, 183-191. Plaintiff underwent a colonoscopy on July 3, 2002, which Dr. Razick thought was indicated because Plaintiff complained of unexplained right upper quadrant pain and had hemoccult positive stool. Dr. Razick wrote that prior workup included an ultrasound and a HIDA scan (which tracks the flow of bile from the liver to the small intestine), both of which were negative. During the colonoscopy, internal hemorrhoids were found and Dr. Razick opined that Plaintiff's severe cramping, which was associated with loose stools, could be the result of spastic colitis. Plaintiff was given a prescription for Levbid and instructed to take Metamucil, adhere to a low fat diet, and avoid milk products. Tr. 154. On August 22, 2002, Dr. Razick opined that Plaintiff's right-sided cramping pain could be IBS. He discontinued Levbid as it caused Plaintiff dry mouth and resulted in only minimal improvement. Nulev was added and Fibercom was recommended. Tr. 153.

As noted above, Plaintiff's alleged onset of disability date is January 6, 2006. On February 15, 2006, Plaintiff complained of diarrhea for two weeks after he ate at a fast food restaurant which was also around the time he changed to generic Libax (medication to relieve abdominal spasms and cramping). He said his stomach gave him so much trouble he could not work any more, and reported that he continued to have joint pain. Dr. Carmichael changed Plaintiff's prescription to name brand Libax and recommended stool cultures, which came back negative. Tr. 183. On February 24, 2006,

4

Dr. Carmichael prescribed the antidepressant Zoloft in addition to Libax for Plaintiff's IBS. Tr. 183. On March 10, 2006, Plaintiff reported some sleepiness from his medication. Dr. Carmichael recommended that Plaintiff "start backing off" Libax. Tr. 182.

On March 23, 2006, Plaintiff complained of feeling dizzy and shaky after stopping Zoloft. Plaintiff had reduced his Libax as previously recommended, quit Zoloft on his own, and restarted Librax after he began having diarrhea again. Dr. Carmichael instructed Plaintiff to restart Zoloft and a reduced dose of Libax. He also noted that Plaintiff complained of muscle aches. Dr. Carmichael's examination revealed that Plaintiff had a normal gait, intact cranial nerves, intact motor and sensory functions, normal reflexes, clear lungs, regular heart rate and rhythm, no peripheral edema, and an intact neurovascular status. He diagnosed Plaintiff with IBS and vertigo, noting that a previous work-up for dizziness had been negative. He prescribed Antivert (medication for nausea and dizziness), administered a B-12 shot (for pernicious anemia), and referred Plaintiff to a rheumatologist for pain complaints. Tr. 182.

As noted above, Plaintiff's insured status expired on March 31, 2006. On April 17, 2006, Dr. Carmichael prescribed medication for Plaintiff's gout pain. On July 12, 2006, Plaintiff complained of giveaway knee pain and low and mid back pain. Dr. Carmichael's examination revealed that Plaintiff had popping sounds in his knees and muscle spasms in his back. Dr. Carmichael thought that Plaintiff's obesity contributed to his knee pain and noted that Plaintiff had strained his back. A B-12 shot was given, a muscle relaxant was prescribed, and Plaintiff was referred to an orthopaedist for his knees. Tr. 182.

On September 7, 2006, Plaintiff complained of joint pain in his arms and "staying in the bathroom all the time." Dr. Carmichael instructed Plaintiff to follow up with Dr. Patel for his arm pain and Dr. Razick for his IBS. Tr. 181.

On October 6, 2006, Plaintiff complained of his blood pressure being too high, but Dr. Carmichael thought it was "not too high." Plaintiff also complained of muscle aches, numbness in his arms (which had been going on for "a while"), and memory problems. Dr. Carmichael thought that Plaintiff's complaints were somatic and related to depression. He referred Plaintiff to a neurologist to "make sure there [was] nothing else going on." Tr. 181.

On October 25, 2006, Plaintiff was examined by Dr. Ashley Kent, a neurologist. Plaintiff complained of right arm tingling and neck pain for the past two to three months, and a history of achy joints due to arthritis. Examination revealed that Plaintiff was morbidly obese, alert, oriented, and in no acute distress. Plaintiff had an intact gait; normal station and posture; intact cranial nerves; intact sensation; normal muscle bulk, tone, and strength; normal deep tendon reflexes, and normal fine motor skills. Dr. Kent thought that Plaintiff appeared depressed, but had intact recent and remote memory and normal attention, concentration, and speech. Plaintiff was diagnosed with worsening depression for which Wellbutrin was prescribed. It was noted that Plaintiff's non-compliance with his continuous positive airway pressure ("CPAP") machine for sleep apnea might be contributing to his memory loss and depression. Nerve studies of Plaintiff's legs and an EMG of his right arm were ordered. Tr. 232-236. These studies revealed mild polyneuropathy and mild right carpal tunnel syndrome. Tr. 231. On November 9, 2006, a sleep study revealed that Plaintiff had moderate obstructive sleep apnea correctable with a CPAP machine. Tr. 230.

On December 13, 2006, Plaintiff reported that his depression was a little better; his CPAP machine for sleep apnea was not working as well; his energy level varied; and he had continued pain in his back, feet, and legs as well as new pain in his neck. Dr. Kent's examination revealed that Plaintiff had intact gait; normal station and posture; intact cranial nerves; and normal muscle bulk, tone, and strength in his extremities. From a mental standpoint, Plaintiff appeared depressed, but was alert and fully oriented with intact recent and remote memory. Tr. 227-229.

On March 14, 2007, a year after Plaintiff's insured status expired, Dr. Kent noted that Plaintiff was doing better depression-wise and complained of pain in his back and legs and weakness in his arms. Upon examination, Plaintiff was noted to be alert and oriented and had an intact gait; normal station and posture; normal speech; intact cranial nerves; normal muscle bulk, tone, and strength; and normal fine motor skills. Dr. Kent opined that Plaintiff was "disabled probably totally due to DM [diabetes mellitus], neuropathy, arthritis, depression, and cervical spondylosis." Tr. 224-226.

Plaintiff continued to seek treatment with Drs. Griffin and Carmichael through 2009. Tr. 237-240. On July 25, 2007, Dr. Griffin wrote a letter to Plaintiff's counsel stating he had treated Plaintiff for over forty years; Plaintiff had a history of kidney stones, pernicious anemia, high blood pressure, and osteoarthritis; and Plaintiff had developed vertigo, bilateral leg neuropathy, reflux, and marked depression. He opined that Plaintiff's condition had "degenerated to the extent that he is now totally disabled." Tr. 211. On January 13, 2009, Dr. Griffin noted that Plaintiff had "right severe osteoarthritis and is totally disabled because of his disease processes." Tr. 238. On January 26, 2009, Dr. Kent saw Plaintiff again and opined that Plaintiff was "probably completely and totally disabled due [to] Depression, arthritis, and [obstructive sleep apnea]" Tr. 212-214.

7

**HEARING TESTIMONY/REPORTS**

In a report dated March 5, 2007, Plaintiff wrote that his daily activities included helping prepare breakfast; doing light housework including laundry, dishes, vacuuming, and taking out trash when he felt up to it; mowing the grass; going to the store; feeding and watering his animals (a dog, a cat, and four horses); watching television; going to doctor's appointments; and going to games to watch his daughter who was a cheerleader. Tr. 111-113. Plaintiff reported that he could prepare simple meals daily and went outside daily for short periods. Tr. 113-114. Plaintiff reported that he went to the grocery store, cleaners, pharmacy, and feed store about once a week. Tr. 114. He was also able to pay bills, count change, handle a savings account, and use checks or money orders. Plaintiff wrote that he rode horses and went camping once a year if at all, attended ball games two to three times a week, and went to "Saddle Club" monthly. Tr. 115. Plaintiff did not socialize as much as he used to due to his IBS. He reported he could walk 100 yards before needing to rest, pay attention for 30 to 45 minutes, and follow spoken instructions "ok" if they were simple and clear. He said he did not handle stress or change very well. Tr. 116-117.

At the hearing before the ALJ, Plaintiff testified that he had a driver's license and did not have any trouble driving. Tr. 21-22. He said that he was a farmer for most of his life. Plaintiff said he stopped working in 2005, but rented his land for farming. Tr. 22-23. He reported that he was 5 feet 8 ½ inches and weighed 235, down from 310 pounds. Tr. 24. Plaintiff stated that IBS caused him to "run to the bathroom" during or after meals, and he sometimes had accidents before he made it to the bathroom. Tr. 24. When this happened, he generally had to go to the bathroom two or three times in a row over a two to three hour period and had extreme pain. Tr. 27. Plaintiff said he occasionally went out to eat at restaurants. Tr. 25.

8

Plaintiff testified that he had become really depressed and took medication for depression. Tr. 25-26. Although the medication he took helped his stomach problems, it did not entirely relieve his ailment. Tr. 27. Plaintiff reported that his stomach problems began before 2006, but became "extremely bad" by early 2006. Tr. 28. He said he had arthritis in his low back, hands, and legs, for which he took prescription Tylenol-based medications which sometimes helped him. Tr. 28-29. Plaintiff said he could lift five or ten pounds without much difficulty, but began having problems lifting over fifteen pounds. He could hold a pen to write, but had to rest due to pain. Tr. 29-30. Plaintiff could stand for fifteen to thirty minutes at a time, but could not stand for long periods due to back pain. Tr. 30. He said he could sit for thirty minutes before having to move around and had difficulty sleeping due to pain. Tr. 30-31. Although he could bathe and dress himself, Plaintiff reported trouble with socks and shoes due to hand pain.

Plaintiff said that he had a "real bad choking problem at one time," but it was relieved by taking Nexium. Tr. 32. His blood pressure, while high sometimes, had been "fairly good. Tr. 33. Plaintiff reported he had taken Wellbutrin for depression since 2006. Tr. 33. He had stopped going to church over the previous three years due to his "stomach and stuff." Tr. 34. Plaintiff said he cut the grass on a riding lawnmower during the cool part of the day, and could not do the entire two acres in one day. He helped wash clothes and vacuum the house a little bit at a time, cooked simple meals, and went to the gas station to get gas or sit around with friends in order to get out of the house. Tr. 35-36.

## **DISCUSSION**

Plaintiff alleges that the ALJ failed to properly evaluate: (1) the opinions of his treating physicians; (2) his credibility; and (3) his residual functional capacity ("RFC"). The Commissioner

9

contends that substantial evidence[2] supports the decision that Plaintiff was not disabled within the meaning of the Social Security Act.

    A.    <u>Treating Physician/Examining Physician</u>

Plaintiff alleges that the ALJ failed to perform the analysis of the opinions of his treating (Dr. Griffin) and examining physician (Dr. Kent) as required by 20 C.F.R. § 404.1527(d)(1)-(6), SSR 96-2p, and SSR 96-5p. He argues that Dr. Griffin's opinion should have been adopted because he treated Plaintiff over a very long time (several decades) and Dr. Griffin should have been recontacted to resolve any ambiguities or for further information,[3] or that the ALJ should have obtained additional evidence. Plaintiff also argues that there is no competing opinion from a treating or examining medical source regarding Plaintiff's RFC. He asserts that even though the opinion is after the date last insured, Dr. Griffin treated Plaintiff for many years and there is no evidence that his impairments dramatically worsened subsequent to the date last insured. He also argues that Dr.

---

[2]Substantial evidence is:
>evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

[3]Although an ALJ must recontact a medical source when the evidence is inadequate for the ALJ to determine whether the claimant is disabled, see 20 C.F.R. § 404.1512(e), it was not the case here. "[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001) (citing 20 C.F.R. § 404.1512(e); alterations in original).

Kent's opinion that Plaintiff was probably disabled in part due to his neuropathy further supports Dr. Griffin's opinion of disability.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount Dr. Griffin's opinion is supported by substantial evidence. The July 2007 opinion was provided more than a year (and the January 2009 opinion was provided almost three years) after Plaintiff's last date insured. As noted by the ALJ, these opinions were

conclusory and "provided very little explanation of the evidence relied on in forming that opinion." Tr. 13. Additionally, the ALJ was not bound by Dr. Griffin's conclusory opinion of disability since the issue of disability is the ultimate issue in a Social Security case and the issue is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984).

The ALJ also discounted Dr. Griffin's opinion in part because it was based to some degree on Dr. Griffin's belief that Plaintiff had bilateral neuropathy and significant depression. Plaintiff argues that the ALJ erred in doing so because there was testing after the date last insured that showed Plaintiff had bilateral neuropathy. Review of that testing, however, only showed "mild" polyneuropathy. Tr. 231. Plaintiff also argues that dismissing the statement on the basis that Plaintiff was not referred to a mental health specialist is speculative. Review of Plaintiff's medical records, however, indicate that he was not treated by any mental health personnel for depression and was not hospitalized for any mental impairment.

Contrary to Plaintiff's argument, the ALJ properly discounted the opinion of examining physician Dr. Kent. Dr. Kent did not even examine Plaintiff until after the last date insured, the first opinion was rendered approximately one year after and the second almost three years after the last date insured and they are speculative (that Plaintiff was "probably" disabled). Additionally, Dr. Kent's opinions are conclusory and on an issue reserved to the Commissioner.

12

B.      Residual Functional Capacity

Plaintiff claims that the ALJ erred in making his RFC assessment because it does not account for his various nonexertional impairments including depression, pain, and IBS. He argues that the RFC assessment does not comply with SSR 96-8p. Plaintiff also argues that he has some nonexertional limitations from his impairments such that VE testimony was required and the ALJ could not rely on the Grids. While conceding "that the ALJ could have engaged in a more detailed discussion of Plaintiff's [RFC]," the Commissioner argues that any error is harmless because the decision is "sufficient to trace the path of the ALJ's reasoning and permit judicial review." The Commissioner argues that the ALJ's RFC assessment reasonably accounts for Plaintiff's nonexertional limitations, the RFC assessment is sufficiently narrative to permit meaningful judicial review, the ALJ reasonably accommodated any limitations Plaintiff had prior to March 31, 2006 by restricting him to unskilled medium work, and the ALJ properly relied on the Grids because the ALJ found that Plaintiff could perform the full range of medium work.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

Here, the ALJ's RFC assessment and finding that Plaintiff had the RFC for medium work is not supported by substantial evidence. Although the ALJ discussed Plaintiff's depression and found

13

that the effect of depression was that it would restrict Plaintiff to unskilled work, it is unclear what impact Plaintiff's other impairments had on his RFC. In the discussion following finding 5 (concerning Plaintiff's RFC), the ALJ recited the medical evidence, discussed the opinions of Drs. Griffin and Kent, discussed the impact of Plaintiff's depression, discussed Plaintiff's hearing testimony, and then concluded that he found that Plaintiff's "back pain, depression, and irritable bowel syndrome could reasonably be expected to preclude heavy work activity but would allow the claimant to perform medium and unskilled work through his date last insured." It is unclear from the decision how the ALJ arrived at his conclusion and what impact Plaintiff's IBS and back impairment had on the ability to perform work.[4] The Commissioner argues that because a normal workday allows employees to take breaks at approximately two-hour intervals, this would accommodate Plaintiff's IBS. The ALJ, however, did not address this in his decision.

---

[4] Once it is determined what the impact of Plaintiff's impairments are on his RFC and his credibility is determined (as discussed below), it may be necessary for the ALJ to obtain VE testimony. Although a VE testified at the March 2009 hearing, the ALJ did not ask the VE any hypothetical questions and the ALJ relied on the Grids in finding that Plaintiff was not disabled. When a claimant: (1) suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985); Cook v. Chater, 901 F. Supp. 971 (D.Md. 1995). A nonexertional impairment is an impairment which is present whether the claimant is attempting to perform the physical requirements of the job or not. See Gory v. Schweiker, 712 F.2d 929 (4th Cir. 1983); see also 20 C.F.R. § 404.1569a. Every nonexertional condition does not, however, rise to the level of a nonexertional impairment. The proper inquiry is whether there is substantial evidence to support the finding that the nonexertional condition affects an individual's residual capacity to perform work of which he is exertionally capable. Walker, 889 F.2d at 49; Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984).

C.      Credibility

Plaintiff alleges that the ALJ failed to correctly assess his credibility because the decision provides no specific rationale or explanation as to why his subjective statements were not credible. The Commissioner argues that the ALJ set forth the proper standards for evaluating a claimant's credibility and properly based his decision on the medical and non-medical evidence.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a claimant's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's credibility determination is not supported by substantial evidence. First, it is based on an RFC determination which is not supported by substantial evidence. Second, it is unclear from the decision why the ALJ discounted Plaintiff's credibility. Although the ALJ discussed Plaintiff's hearing testimony and Plaintiff's demeanor at the hearing (Tr. 13-14), the ALJ merely concluded that

15

Plaintiff's symptoms were not credible to the extent they were inconsistent with the RFC found by the ALJ. It is unclear how the ALJ arrived at his conclusion.

## **CONCLUSION**

The Commissioner's decision as to Plaintiff's RFC and credibility is not supported by substantial evidence. It is RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and 1383(c)(3) and the case be remanded to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

November 12, 2010
Columbia, South Carolina